## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ROSE MARIE GARCÍA-DÍAZ, et al.,**

**Plaintiffs,**                                          CIVIL NO. 14-1354 (GAG)

**v.**

**HON. EDUARDO CINTRÓN-SUÁREZ et al.,**

**Defendants.**

## OPINION AND ORDER

On May 2, 2014, Rose Marie García-Díaz ("García-Díaz") and Yachira García-Velázquez ("García-Velázquez") (together referred to as "Plaintiffs") brought this action against the Honorable Eduardo Cintrón-Suárez ("Cintrón-Suárez") in his official capacity as Mayor of the Municipality of Guayama ("the Municipality"), as well as in his personal capacity, against Lieutenant Daniel Colón-Díaz ("Colón-Díaz") in his official capacity as the Commissioner of the Municipal Police of the Municipality of Guayama, as well as in his personal capacity, and against the Municipality (together referred to as "Defendants"). Essentially, Plaintiffs claim that they were dismissed from their appointments as police cadets in the Municipal Police because of their political affiliation as active members of the New Progressive Party ("NPP"). They allege violations of their Due Process, Equal Protection, and First Amendment rights under the Constitution of the United States, as well as under the laws and Constitution of Puerto Rico. (Docket No. 1 ¶ 1.) Plaintiffs pray for equitable relief in the form of reinstatement and legal relief in the form of economic and punitive damages, pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1983.

Civil No. 14-1354 (GAG)

Presently before the court are Defendants' two motions to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In the first motion, Defendants move to dismiss Plaintiffs' claims against them in their official capacity by arguing that Plaintiffs fail to state a claim upon which relief can be granted.  (Docket No. 12.)  The second motion seeks dismissal of Plaintiffs' claims against Defendants in their personal capacity.  (Docket No. 19.)  Due to similarities in the arguments raised in both motions to dismiss and because they involve the same set of facts, the court addresses both motions together in this Opinion and Order.  For the following reasons, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 12 and **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 19.

## I.   Relevant Factual and Procedural Background

In March 2012, Plaintiffs, who are known supporters of the NPP, were appointed as Municipal Police cadets by Glorimar Jaime-Rodríguez ("Jaime-Rodríguez"), the Municipality's then-incumbent Mayor and Municipal President of the NPP ticket in the 2008 and 2012 elections. (Docket No. 1 ¶¶ 2-3, 5.)  As part of their appointments as cadets, Plaintiffs had to graduate from the University College of Criminal Justice of Puerto Rico ("CUJC") as a condition to enter the Municipal Police force.   Id. ¶ 22.   Plaintiffs applied and submitted the supplementary documentation, and began to take the necessary exams and evaluations to become officers in the Municipal Police, which they initially passed with flying colors.  Id. ¶ 21.  In July 2012, Plaintiffs were moved to the Gurabo Campus of the CUJC where they attended further courses and training, and served shifts in the Municipal Police when required.  Id. ¶ 23.  As part of the CUJC, Plaintiffs had to pass physical training courses but they failed the first training session.  Id. ¶ 24.

Civil No. 14-1354 (GAG)

1    Nevertheless, they trained daily for two hours and improved their physical condition noticeably.

2    (Docket No. 1 ¶ 24.)  According to Plaintiffs, the purpose of the daily training was to retake the

3    physical training courses a second time and pass them.  Id.

4           Thereafter, the 2012 electoral campaign season began.  Political affiliation was commonly

5    discussed and stated between personnel in government offices, particularly in the Municipality

6    where people are not only co-workers but neighbors and life-long acquaintances.  Id. ¶ 17.  It was

7    customary for employees at the Municipality, where Plaintiffs worked at the time, to express their

8    support for their respective parties and candidates.  Id.  Plaintiffs claim they are well-known active

9    supporters of the NPP party.  Id. ¶ 3.

10          The political atmosphere in the Municipality was tense because of the highly contested race

11   for the position of mayor.  Id.  During campaign season, it was customary for the headquarters of

12   all political parties in the Municipality to have security assigned because of the aforementioned

13   heated political atmosphere.  Id. ¶ 25.  Plaintiffs thus were assigned to provide protection and

14   security at the Popular Democratic Party ("PDP") Municipal headquarters, which served as

15   Cintrón-Suárez's campaign headquarters.  Id.  While there, Plaintiffs claim they would often hear

16   the headquarters staff tell them that they were "Glorimari's kids," in reference to the NPP

17   incumbent Mayor, Jaime-Rodríguez, who appointed them as Police cadets and whom they

18   supported in the upcoming election.  Plaintiffs also allege that they heard comments like "it should

19   be difficult for them to be there" in reference to their different political affiliation, and that being

20   there "must be a punishment for them."  Id.

21          Plaintiffs further claim that when Cintrón-Suárez first saw them stationed in his

22   headquarters, he spoke to García-Velázquez and said, "my God, kid, you here, what a miracle . . .

23   that commissioner really wants to find out what happens here" in reference to the former

24

3

Civil No. 14-1354 (GAG)

Municipal Police Commissioner who was a trust appointment by Jaime-Rodríguez.  (Docket No. 1 ¶ 25.)  Cintrón-Suárez then spoke with a Municipal Police officer there and asked him whether he was also one of "Glorimari's kids," and when the officer responded that his family supported the PDP, Cintrón-Suárez "high-fived" him and said "this one knows."  Id.

In another instance, on November 4, 2012, a helicopter emblazoned with the word "Gloricoptero," referencing Jaime-Rodríguez, flew around the Municipality advertising in favor of her reelection campaign.  Id. ¶ 26.  At his campaign headquarters, Cintrón-Suárez saw the helicopter and grew angry at his opponent's campaign advertising.  Id.  During his tirade, Cintrón-Suárez looked at Plaintiffs and, referring to them, said something to the effect of "and look what they send to my place, people who I do not trust, I need people I can trust and see who they send to my campaign headquarters, but you will be kicked out when I win, you will leave your positions." Id.

The elections finally arrived and, on November 6, 2012, Puerto Rico held general elections for all elected positions in government.  Id. ¶ 17.  In the Municipality, Jaime-Rodríguez lost to Cintrón-Suárez, who became Mayor-Elect.  Id.  Immediately following the general elections, municipal employees affiliated with the PDP began telling Plaintiffs that they and other NPP supporters would be dismissed as soon as Cintrón-Suárez took office.  Id.¶ 19.  In their words, Cintrón-Suárez came "to clean them out."  Id.  Cintrón-Suárez and his supporters criticized Plaintiffs' appointments with personal attacks, even calling them "walking meatballs" and "whales out of water."  Id. ¶ 21.

Plaintiffs continued to take the required courses as cadets and on November 26, 2012, while they were taking the CUJC course CIPO 212, García-Díaz began to feel a sharp pain in her right knee.  Id. ¶ 27.  The instructor asked García-Díaz about the pain, and she answered that

**Civil No. 14-1354 (GAG)**

although it hurt, she was willing to continue with the exercise.  (Docket No. 1 ¶ 27.)  García-Díaz insisted that she needed to pass that course and wanted to continue, but the instructor told her that her health was more important and that the course would be offered again.  Id.  The instructor assured García-Díaz that she would take the course again.  Id.  After García-Velázquez was informed that García-Díaz could not complete the course because of her knee, she was also pulled from the CIPO 212 course, despite not having any difficulties, so that they could retake the course together.  Id. ¶ 28.

García-Díaz was then evaluated by a paramedic who referred her to the State Insurance Fund Corporation ("SIFC") where she was evaluated and given a clean bill of health.  Id. ¶ 29.  She delivered the documents from the SIFC to the Municipal Police Headquarters in the Municipality and was told by a Lieutenant Rivera-Hernandez that she had nothing to worry about and that she would have another opportunity to finish that course.  Id.  García-Díaz and García-Velázquez returned to the Municipal Police and were told to await instructions from the Municipality as to when they could retake the pending CIPO 212 course and the physical training, since they claim that they had already taken and approved the remaining courses needed to pass the CUJC.  Id. ¶ 30.

Subsequently, in January 2013, Plaintiffs told Capt. Torres-Suárez of the Municipal Police that they needed to send a letter to the CUJC so they could retake the physical training and CIPO 212 courses they had failed and for which they were enrolled.  Id. ¶ 31.  However, Plaintiffs claim that the Municipal Police never followed up on their request, and never authorized their attendance to either course.  Id.  Plaintiffs continued to work for the Municipal Police full-time as cadets.  Id. ¶ 32.  Because they had not completed the required courses to graduate from the CUJC and officially join the Municipal Police, Plaintiffs aver that they asked Colón-Díaz every day if he had

Civil No. 14-1354 (GAG)

sent the request to retake the two courses at the CUJC.  (Docket No. 1 ¶ 33.)  Colón-Díaz would

usually respond that they were working on that and that they should ask Lieutenant Ruben Cruz.

Id.  In fact, as will be discussed infra, on March 14, 2013, Colón-Díaz sent a request to the

Associate Superintendent of the Puerto Rico Police, requesting that Plaintiffs be allowed to retake

the pending courses at the CUCJ.  (Docket No. 20-1.)[1]

On May 6, 2013, Plaintiffs were ordered by Colón-Díaz to report to the Human Resources

Office of the Municipality where they were handed a dismissal letter from the Municipal Police

Also in March 2013, Plaintiffs received a letter from Colón-Díaz ordering them to attend a

course in emergency management which was to take place the same days as the CIPO 212 course,

one of the pending courses that Plaintiffs needed to pass to graduate from the CUJC.  (Docket No.

1 ¶ 34.)  Colón-Díaz met with Plaintiffs and told them that he was sending them to the emergency

management course because he was going to make a change in Plaintiffs' positions.  Id.  Plaintiffs

allege that Colón-Díaz also told them that he had done all he could to keep Plaintiffs in their

positions but that Mayor Cintrón-Suárez did not want them in the Municipal Police.  Id.  Plaintiffs

took the emergency management course in late March/early April 2013, passed it, and received

their corresponding certificates.  Id.

On May 6, 2013, Plaintiffs were ordered by Colón-Díaz to report to the Human Resources

Office of the Municipality where they were handed a dismissal letter from the Municipal Police

program.  Id. ¶ 35.  The letter, signed by Cintrón-Suárez, stated that Plaintiffs did not comply with

the requirements for completing the CUJC courses.  (Docket Nos. 1 ¶ 35; 20-3.)  The letter made

reference to a letter from Police Superintendent Héctor M. Pesquera, which stated that Plaintiffs

---

[1] When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court is not limited to the four corners of the complaint." Wright & miller, Federal Practice and Procedure: Civil 3d § 1357 (2013).  Exceptions to the rule barring a court from considering exhibits in a motion to dismiss include: (1) when a documents' authenticity is not in dispute; (2) when the documents are central to plaintiff's claim; or, (3) when documents are sufficiently referred to in the complaint.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Because Plaintiffs make reference to their request to Colón-Díaz to forward their concerns to the Municipal Police, and this allegation is related to their claims Defendants, and because Plaintiffs do not contest the letter's authenticity, the court will consider this and other related documents in the context of the motion to dismiss without turning it into a motion for summary judgment.  (See Docket No. 1 ¶ 34-36.)

Civil No. 14-1354 (GAG)

had failed the physical training and the CIPO 212 courses twice and, thus, did not comply with the requirements for graduating from the CUJC and becoming Municipal Police officers. (Docket No. 1 ¶ 36; 20-3.) As such, their appointment as police cadets was being terminated. Id.

Plaintiffs claim that they were never given the opportunity to take either the physical training or the CIPO 212 courses a second time, but because Plaintiffs were enrolled in them, it appeared as if they had failed the courses twice. Id. ¶ 36. Upon being dismissed, García-Díaz immediately called Mr. Raul Rodríguez of the CUJC to inquire if a request for them to retake the courses had been denied there. Id. ¶ 37. He responded that he was not aware of any such determination, and suggested that she meet with the then-Chancellor of the CUJC, Zulma Mendez-Ferrer ("Mendez-Ferrer"). Id. Plaintiffs met with Mendez-Ferrer who explained that the situation could only be remedied by the Municipality, since the CUCJ had received no communication from the Municipality regarding their pending courses. Id. As aforementioned, on March 14, 2013, Colón-Díaz sent a request to the Associate Superintendent of the Puerto Rico Police requesting that Plaintiffs be allowed to retake the pending courses at the CUCJ. (Docket No. 20-1.) The letter was copied to Mendez-Ferrer. See id. On March 26, 2013, Superintendent Pesquera sent a response to the request denying said request to retake the courses. (Docket No. 20-2.)[2]

Prior to their dismissal, Plaintiffs claim that they had been consistent in fulfilling their duties at the Municipality with excellence and had passed most of the CUJC courses with high marks. (Docket No. 1 ¶¶ 40, 43.) Also, Plaintiffs claim that they received no previous notice or hearing regarding an evaluation of their performance prior to their termination. Id. ¶ 35. Plaintiffs were not involved in the creation of public policy or involved with or had access to confidential

---

[2] Same as with the letter by Colón-Díaz, Plaintiffs do not dispute the authenticity of the letter sent by the Superintendent to Cintrón-Suárez and they make reference to it in their complaint. More so, the letter is at the center of Plaintiff's claims. As such, the court considers it in its analysis without turning this motion into a motion for summary judgment.

Civil No. 14-1354 (GAG)

matters.  Id ¶ 5. In addition, Plaintiffs claim that after they were dismissed, the Municipal Police in the Municipality hired PDP supporters to different positions, thus replacing them with PDP members.  Id. ¶ 4.

As a result of their dismissal as Municipal Police cadets, Plaintiffs allege that they have suffered economic and emotional damages.  Id. ¶ 41, 44.  Having lost their jobs, Plaintiffs claim they were left without means to meet their economic obligations.  Id.  This in turn has caused them depression, loss of motivation and problems paying their debts.  Id.

## II.  Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court.  See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense.  Id. (citing Iqbal, 556 U.S. at 678-79).  This "simply calls

Civil No. 14-1354 (GAG)

for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

**III. Discussion**

In their motions to dismiss, Defendants argue that: (1) Plaintiffs fail to state a plausible procedural due process claim under 42 U.S.C. § 1983 upon which relief can be granted because, as police cadets, Plaintiffs had no constitutionally protected property interest; and, (2) Plaintiffs fail to state a plausible First Amendment claim under 42 U.S.C. § 1983 upon which relief can be granted because they fail to plead the fourth element of a political discrimination claim: that political affiliation was a substantial or motivating factor for the challenged employment action. (Docket Nos. 12; 19.)

A. Section 1983

Section 1983 does not create any independent substantive rights. Caraballo v. P.R., 990 F. Supp. 2d 165, 172-173 (D.P.R. 2014). It is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. See Baker v. McCollan, 443 U.S. 137, 145, n.3 (1979). When assessing the imposition of liability under Section 1983, the court must first ask: "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges or

**Civil No. 14-1354 (GAG)**

immunities secured by the Constitution or laws of the United States." <u>Caraballo</u>, 990 F. Supp 2d at 172-173.

In the present case, all of the facts alleged by Plaintiffs transpired under the umbrella of the Municipal Police of the Municipality where they were employed as police cadets.  At all relevant times, defendant Cintrón-Suárez was the Mayor of the Municipality and defendant Colón-Díaz was the Commissioner of the Municipal Police of the Municipality.  Mayors in Puerto Rico are government officials ultimately responsible for the employment decisions of the municipality. <u>Rodríguez-García v. Miranda-Marín</u>, 610 F.3d 756, 770 (1st Cir. 2010).  Under Puerto Rico law, one of the express powers given to mayors of the municipalities is: "to appoint all the officials and employees of the municipal executive branch, and remove them from office whenever necessary for the good of the service, pursuant to the procedures provided herein."  P.R. LAWS ANN. tit. 21, ch. 155 § 3002(15).  Like all mayors in Puerto Rico, Cintrón-Suárez had final policy making authority over municipal employment generally and his decisions constituted the official policy of the Municipality.  In addition, under Puerto Rico law, the immediate direction and supervision of the Municipal Police Corps shall be under the charge of a Commissioner, who shall be appointed by the mayor.  P.R. LAWS ANN. tit. 21, ch. 97 § 1061.  As such, Cintrón-Suárez as Mayor of the Municipality and Colón-Díaz as Commissioner of the Municipal Police of the Municipality were, at all times relevant, employed by the Municipality and acted in their **official capacities** under color of state law.  Furthermore, the alleged discriminatory and illegal acts committed by them against Plaintiffs occurred within the scope of their employment, as Plaintiffs worked under the individual Defendants.  Thus, the individual Defendants were acting under color of state law at all relevant times when the purported discriminatory conduct transpired.  Therefore, Section 1983 is

Civil No. 14-1354 (GAG)

an appropriate avenue to remedy the alleged conduct that supposedly deprived Plaintiffs of their "rights, privileges, and immunities" protected by law.

Accordingly, the court will now analyze each constitutional violation alleged by Plaintiffs against each Defendant in their official as well as in their personal capacities.

### B.   Fourteenth Amendment Due Process Claim

In moving to dismiss Plaintiffs' claims, Defendants argue that Plaintiffs fail to state a due process claim upon which relief can be granted.  (Docket No. 12 at 6.)  The first step in evaluating plaintiff's due process claim under Section 1983 is to identify the exact contours of the constitutional right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.  Cty. of Sacramento v. Lewis, 833 U.S. 841 n. 5 (1998).

The due process guarantee includes both procedural and substantive aspects.  See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008).  Although Plaintiffs fail to specify which type of due process claim they are pursuing in their complaint, their allegations solely point to procedural aspects.[3]  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protections of liberty and property" by state action.  Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  The Due Process Clause of the Fourteenth Amendment protects government employees who possess a property interest in their continued public employment.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  Once a state confers a property interest in public employment, it may not deprive an individual of said interest without due process of law.  Figueroa–Serrano v. Ramos–Alverio, 221 F.3d 1, 6 (1st Cir. 2000); see  Gonzalez–De Blasini v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004) (holding that a

---

[3] Plaintiffs invoke the Equal Protection Clause of the Fourteenth Amendment in the jurisdictional statement of their complaint.  (Docket No. 1 ¶ 1.)  However, Plaintiffs fail to develop any arguments with regards to said clause aside from mentioning it once in said statement of the complaint.  Thus, the court will not embark on an Equal Protection analysis.

Civil No. 14-1354 (GAG)

public employee who possesses a property interest in continued employment cannot be discharged without due process of law).

This right encompasses that public employees who possess a property interest in continued employment receive a proper notice and a hearing prior to the termination of their employment. Febus-Cruz v. Sauri Santiago, 652 F. Supp. 2d 140, 150-151 (D.P.R. 2009) (citing Cleveland Bd. of Educ., 470 U.S. at 542-44).   A person is only entitled to procedural due process if she can establish that the government deprived her of a constitutionally protected interest.  Costa Urena v. Segarra, F.3d 18, 26 (1st Cir. 2009).

### 1. Due Process Claims against Defendants in their Official Capacity

To state a plausible due process claim, Plaintiffs must show that: (1) they possessed a property interest; and, (2) Defendants, acting under color of state law, deprived them of that property interest without a constitutionally adequate process.  See Mimiya Hosp., Inc. v. U.S. Dept. of Health & Human Serv., 331 F. 3d 178, 181 (1st Cir. 2003); see also Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996).  First, to determine whether public employees possess a property interest, the court examines the local law and the terms and conditions of the employment arrangement.  See Torres v. House of Representatives of the Commonwealth of P.R., 858 F. Supp. 2d 172, 183 (D.P.R. 2012); see also Roth, 408 U.S. at 577 (holding that "the Constitution does not create property interests; instead, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."); see also Ruiz-Casillas v. Camacho-Morales, 415 F. 3d 127, 134 (1st Cir. 2005).  Further, to establish the violation of a property right, Plaintiffs must show more than an abstract need or desire for it, more than a unilateral expectation of it; instead, they must have a legitimate claim of entitlement to the right.  See Bd. of Regents, 408 U.S. at 564.

Civil No. 14-1354 (GAG)

a.  First Prong-Possession of Property Interest

Under Puerto Rico law, municipal employees are classified as confidential, probationary career, regular career, transitory and irregular.  P.R. Laws Ann. tit. 21, § 4554.  Confidential employees are those who intervene or collaborate substantially in the formation of public policy and advise directly or render direct services to the head of the agency.  See tit. 21, § 4553.  They are freely selected and are also freely removable by the employer.  Tit. 21, § 4554.  It is uncontested that Plaintiffs were not trust or confidential employees because they did not perform functions that could influence public policy, and did not have access to confidential information. (Docket No. 1 ¶ 7.)

Government employees are further classified as "transitory" or "temporary," on the one hand, or as "career" or "permanent" on the other.  See Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 27 n.4 (1st Cir. 2005), *vacated on other grounds* in Vázquez-Valentín v. Santiago-Díaz, 546 U.S. 1163 (2006).  In Puerto Rico, career government employees have a property interest in their continued employment.  See Gonzalez–De Blasini, 377 F.3d at 86.  Plaintiffs were not career employees because they were police cadets and their appointment was conditioned upon passing the CUJC and Plaintiffs did not.  (Docket No. 1 ¶ 22.)  After their appointment, Plaintiffs entered into a probationary period during which they had to pass all requisite courses and satisfactorily graduate from the CUJC to become full-fledged Municipal Police officers with career positions. Id. ¶¶ 22-23.  Probationary career employees are only entitled to permanent status once they complete their probationary period.  P.R. Laws Ann. tit. 21, § 4554.  Puerto Rico law defines a probationary period as a term during which an employee, upon being appointed to a position, is in a period of training and testing and is subject to evaluations of his/her performance of his/her duties and functions.  P.R. Laws Ann. tit. 21, § 4551a.  During said period, the employee has **not**

Civil No. 14-1354 (GAG)

acquired any property rights.  Tit. 3, § 1461.  Any employee may be separated from his/her career

position during the probationary period or at the end thereof, after having been duly advised and

trained, if it is determined that his/her progress and adaptability to the norms of the municipal

public service have not been satisfactory.  Tit. 21, § 4558.  In light of the above, if Plaintiffs had

satisfactorily passed all requisite courses as cadets and thus completed their probationary period to

formally become career Municipal Police officers, then they would have acquired a property

interest in their employment.

Defendants primarily argue that Plaintiffs do not have a property interest in their position

as cadets because "they were appointed as cadets, conditioned upon them approving the required

training, as per the Municipal Police Law." (Docket No. 12 at 6.)  The underlying argument is that

Plaintiffs were not vested with a property interest in their employment because they did not

complete their probationary period, which required them to complete and pass all the courses at the

CUJC, and they did not.  (Docket No. 19 at 11-12.)  In other words, Plaintiffs never transitioned

from their probationary period to a career employment position.

Plaintiffs challenge Defendants' contention arguing that they could not become vested as

Municipal Police officers because Defendants impeded them from doing so because of their

political affiliation.  (Docket No. 1 ¶¶ 25-26, 31, 33-34, 37.)  As such, Defendants cannot argue

that Plaintiffs do not have a property interest if Defendants' actions prevented Plaintiffs from

acquiring such an interest in their employment.  In the complaint Plaintiffs allege that: (1) they

submitted the required paperwork to be admitted as Municipal Police Officers  Id. ¶ 21-22; (2) they

passed all the preliminary tests with "flying colors"  id.; (3) they failed their physical training but

they worked out daily and greatly improved their physical condition in order to retake the course a

second time id. ¶ 24; (4) they passed all other courses with high scores id. ¶ 23; (5) they registered

14

Civil No. 14-1354 (GAG)

to take the physical training and CIPO 212 courses (that they did not complete) a second time but were not authorized to take them because of Defendants' politically motivated actions.  id. ¶ 36; and (6) since they had already registered for both courses, it appeared as if they had taken them (and failed) twice. Id.  In addition, Plaintiffs claim that Defendants allegedly assigned them to take an emergency management course the same day the CIPO 212 course was being offered, forcing Plaintiffs to forego the CIPO 212 course they needed to graduate.  In essence, Plaintiffs claim that because of their political affiliation with the NPP Defendants purposely hindered their ability to become career Municipal Officers by sabotaging their employment efforts and preventing them from retaking the courses they needed to pass the CUJC.  (Id. ¶¶ 25-26, 31, 33-34, 37.)  As such, Plaintiffs claim that Defendants' discriminatory actions prevented them from their "would-be" property rights in their employment.

Further, Plaintiffs contend that there is a genuine issue of fact as to whether the Municipal Police regulations, or any other applicable regulation, city ordinance, law or source of rights, establishes a property interest for Plaintiffs in their appointments as cadets (during the probationary period).  (Docket No. 22 ¶ 19.)  Defendants, on the other hand, argue that no property interest vests in Plaintiffs' probationary career employment until they passed the applicable training requirement, as per Municipal Law, to then become Municipal Police officers.  (Docket No. 12 at 6-7.)  This is relevant as to the issue of whether local law creates a property interest for Plaintiffs to succeed in their due process claim.  At this stage, the parties have not yet begun the discovery process and without it this matter shall be resolved at a later time.

In ruling on this motion, the court accepts all factual allegations as true and makes all reasonable inferences in Plaintiff's favor.  Rojas v. Principi, 326 F. Supp. 2d 267, 271-272 (D.P.R. 2004).  In light of Plaintiffs' factual allegations, the court can make a reasonable inference that

**Civil No. 14-1354 (GAG)**

Defendants' actions might have truncated Plaintiffs' ability to become career Municipal Police officers, thereby affecting their property right in their employment.  As such, the court finds that Plaintiffs' allegations sufficiently establish that but-for Defendants' actions, Plaintiffs would have acquired a property interest.  More so, it is plausible that pursuant to local law Plaintiffs, as police cadets, indeed possessed a property interest.  In view of the above, the court finds that at this time Plaintiffs satisfy the first prong of the procedural due process test.

b.   <u>Second Prong-Deprivation of the Property Interest</u>

The court now turns to the second prong of the due process test: whether Defendants, acting under color of state law, deprived Plaintiffs of a property interest without a constitutionally adequate process.  <u>See</u> <u>Mimiya Hosp., Inc.</u>, 331 F. 3d 178, 181 (1st Cir. 2003).  Defendants' arguments in favor of dismissing Plaintiffs' due process claim hinge on the notion that Plaintiffs do not possess a property interest because they were police cadets.  As such, Defendants aver that they terminated Plaintiffs' employment without a constitutionally adequate process since they were not required to provide one.  (Docket No. 12 at 7.)  In turn, it is not disputed that Plaintiffs were not afforded any due process guarantees.

In addressing liability of a defendant in his official capacity, the main question is whether each defendant's role in the constitutional violation is sufficiently alleged to make him a plausible defendant.  <u>Ocasio-Hernández</u>, 640 F.3d at 16.  A defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic.  <u>Iqbal</u>, 556 U.S. at 683.  Thus, the court must examine whether each Defendant played a role in depriving Plaintiffs of a property interest.

Civil No. 14-1354 (GAG)

           c.  <u>Due Process Claims Against Cintrón-Suárez in his Official Capacity and the Municipality</u>

The court found that Cintrón-Suárez, at all times relevant, acted in his official capacity as Mayor of the Municipality and, in turn, as the ultimate decision maker concerning Plaintiffs' employment. <u>See</u> <u>Rodríguez-García</u>, 610 F.3d at 770.  Under Puerto Rico law, one of the express powers given to mayors is: "to appoint all the officials and employees of the municipal executive branch, and remove them from office whenever necessary for the good of the service, pursuant to the procedures provided herein."  P.R. LAWS ANN. tit. 21, ch. 155 § 3002(15).  With this in mind, the court now addresses whether his role in the constitutional violation is sufficiently alleged to make him a plausible defendant.

A municipality is subject to liability under Section 1983 in a suit against a municipal officer in his official capacity when the violation of the plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker.  <u>See</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471-472 (1985); <u>see</u> <u>also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  Further, municipal liability may be based on a single decision by a municipal official who has final policy-making authority.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988).  Whether an official has final policy-making authority is an issue of law to be determined by reference to state and local law.  <u>See</u> <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989).  As mayor, Cintrón-Suárez has final policy making authority as to municipal employment generally and his decisions constitute the official policy of the Municipality.  <u>See</u> Tit. 21, § 3002(15).  Thus, liability may be imposed on the Municipality for Cintrón-Suárez's own direct acts or omissions as Mayor of Guayama, which may have resulted in a violation of Plaintiffs' rights.

**Civil No. 14-1354 (GAG)**

1

2          On the one hand, Plaintiffs claim that Cintrón-Suárez had actual or constructive knowledge

3   of the constitutional violation because he terminated their employment under the pretext that

4   Plaintiffs failed the physical training and CIPO 212 courses twice, even though he knew they had

5   only taken them once.  (Docket No. 1 ¶¶ 33-34.)  More so, Plaintiffs claim that Cintrón-Suárez's

6   discriminatory actions impeded them from becoming municipal police officers with career

7   positions, which affords them with a property interest and that they were dismissed without prior

8   notice or hearing, in violation of their due process rights.  Id. ¶¶ 35, 52.

9          On the other hand, Defendants contend that Plaintiffs fail to allege that Cintrón-Suárez was

10  directly and personally responsible for the purported unconstitutional conduct.  Acting as Mayor,

11  Cintrón-Suárez was responsible for Plaintiffs' termination.  Defendants aver that Plaintiffs' request

12  to retake the courses was denied in reference to Superintendent Pesquera's letter, which stated that

13  Plaintiffs had failed the physical training and the CIPO 212 courses twice, and, as such, they did

14  not comply with the requirements of the CUJC.  (Docket No. 12 at 7.)  Defendants aver that

15  following the Superintendent's orders, Cintrón-Suárez dismissed Plaintiffs from their positions as

16  cadets.  Id.  Hence, Defendants claim that Cintrón-Suárez followed protocol with Plaintiffs'

17  termination and that no procedural due process rights were warranted because as cadets Plaintiffs

18  do not have a vested property interest in their employment.  Id.

19         Taking Plaintiffs' allegations as true, it is plausible that Cintrón-Suárez knew that Plaintiffs

20  had only taken the courses at issue once because they claim that they notified the Municipality of

21  this on more than one occasion.  (Docket No. 1 ¶ 33-34.)  It is plausible that Cintrón-Suárez had

22  constructive knowledge of this fact, but nevertheless terminated Plaintiffs' employment thereby

23  inflicting a constitutional injury to Plaintiffs and depriving them of a property interest.

24

**Civil No. 14-1354 (GAG)**

1    The court finds that at this stage Plaintiffs have sufficiently pleaded a plausible Fourteenth

2  Amendment procedural due process claim against Cintrón-Suárez in his official capacity.

3  Accordingly, the court hereby **DENIES** Defendants' motion to dismiss at Docket No. 12 as to this

4  claim.   Further, in light of the court's finding that Cintrón-Suárez may be liable in his official

5  capacity, it is plausible that the Municipality is subject to liability as well.   Accordingly, the court

6  hereby **DENIES** the motion to dismiss at Docket No. 12 as to the Due Process claims against the

7  Municipality.

8                     d.   <u>Due Process Claims Against Colón-Díaz in his Official Capacity</u>

9    The court found that Colón-Díaz, at all times relevant, acted in his official capacity as

10  Commissioner of the Municipal Police of the Municipality.   Under Puerto Rico law, "the highest

11  authority in the direction of the Municipal Police shall be vested in the mayor, but the immediate

12  direction and supervision of the Corps shall be under the charge of a Commissioner, who shall be

13  appointed by the mayor"  P.R. LAWS. ANN. tit. 21, ch. 97 § 1061.   The question here turns on

14  whether Colón-Díaz, acting under color of state law, deprived Plaintiffs of a property interest.

15    Plaintiffs allege that they asked Colón-Díaz if he had sent their request to the CUJC to

16  retake the two courses they had not passed to the CUJC.   (Docket Nos. 1 ¶ 33; 20-1.)   An

17  examination of the latter shows that Colón-Díaz indeed forwarded Plaintiffs' request.   (Docket No.

18  20-1.)   Plaintiffs nevertheless allege that Colón-Díaz sent them a letter ordering them to attend a

19  course in emergency management which took place the same days as the CIPO 212 course, which

20  they had to retake, and transferred them to the Command Center.   (Docket No. 1 ¶ 34.)   Plaintiffs

21  further allege that Colón-Díaz admitted to having done all he could to keep Plaintiffs in their

22  positions but that Cintrón-Suárez did not want them in the Municipal Police.   (Docket No. 1 ¶ 34.)

23  Plaintiffs also claim that Colón-Díaz ordered them to report to the Human Resources Office of the

24

**Civil No. 14-1354 (GAG)**

1    Municipality where they received their dismissal letter.  Id. ¶ 35.  Defendants, on the other hand,

2    contend that Plaintiffs fail to allege that Colón-Díaz acted on account of a constitutionally

3    protected conduct, and is thus not a plausible defendant.  (Docket No. 12 at 11.)  They moreover

4    aver that Plaintiffs fail to establish that Colón-Díaz was directly responsible for inflicting a

5    constitutional injury onto Plaintiffs and that Plaintiffs did not possess a property interest which

6    warranted any due process rights.

7         Taking Plaintiffs' allegations as true, it is plausible that Colón-Díaz knew that Plaintiffs

8    had to take the CIPO 212 course and pass it because he wrote a letter to the CUJC requesting that

9    Plaintiffs be allowed to retake said course and the physical training.  (Docket No. 1 ¶¶ 33-34; 20-

10   1.)  Nonetheless, Colón-Díaz assigned Plaintiffs to take an emergency management course the

11   same day they would have taken the CIPO 212 course thereby frustrating their efforts to retake

12   said course and was the person who sent them to Human Resources to receive their termination

13   letters.  This, in connection with Plaintiffs' contention that Colón-Díaz told them he did everything

14   he could but that Cintrón-Suárez wanted them out of the Municipal Police, can lead to a plausible

15   inference that his conduct set in motion "a series of acts by others" which he "reasonably should

16   know" would cause others to inflict a constitutional injury" onto Plaintiffs.  See Sánchez v.

17   Pereira-Castillo, 590 F.3d 31, 50 (1st Cir. 2009).  Even if Plaintiffs fail to lodge allegations of

18   direct acts by Colón-Díaz that caused their alleged injuries, it is plausible that his omissions or

19   inactions caused those injuries and affected their property interests.

20        Accordingly, the court hereby **DENIES** Defendants' motion to dismiss at Docket No. 12 as

21   to Plaintiffs' Fourteenth Amendment procedural due process claims against Colón-Díaz in his

22   official capacity.

23

24

Civil No. 14-1354 (GAG)

2.   **Due Process Claims Against Defendants in their Personal Capacity**

The court now turns to Plaintiffs' procedural due process claims against Defendants in their personal capacities. Public officials may be held liable under Section 1983 for a constitutional violation only if a plaintiff can establish that his or her **constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization**. Ocasio-Hernández, 640 F.3d at 16. Plaintiffs must show that the official had actual or constructive notice of the constitutional violation. See Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988). Essentially, **Plaintiffs must demonstrate that each defendant was a constitutional wrongdoer**. Iqbal, 556 U.S. at 683. This standard can be satisfied by conduct setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. Sánchez, 590 F.3d at 50.

a.   Due Process Claims Against Cintrón-Suárez in his Personal Capacity

The standard for personal liability is whether Plaintiffs can establish that their constitutional injury resulted from direct acts or omissions by Cintrón-Suárez. As discussed above, Plaintiffs plead sufficient facts to establish a plausible procedural due process claim against Cintrón-Suárez in his official capacity that may entitle them to relief. As discussed in part III.A.1.a., Plaintiffs plead sufficient facts to establish that it is plausible that Cintrón-Suárez knew Plaintiffs had only taken the required courses once, and that he signed their dismissal letter using Superintendent Pesquera's letter as a pretext. (Docket No. 1 ¶¶ 33-34.)

As such, taking Plaintiffs' allegations as true, it is plausible that Cintrón-Suárez may be liable in his personal capacity because as the court found in part III.A.1.a., Plaintiffs have alleged sufficient facts for the court to infer that Cintrón-Suárez's acts or omissions as Mayor of the

Civil No. 14-1354 (GAG)

Municipality violated Plaintiffs' due process rights and that he had actual or constructive notice that in dismissing Plaintiffs he was engaging in a constitutional violation.

In light of the above and because Cintrón-Suárez may be liable in his official capacity, it is plausible he may also be liable in his personal capacity.  Accordingly, the court hereby **DENIES** Defendants' motion to dismiss at Docket No. 19 as to Plaintiffs' due process claims against Cintrón-Suárez in his personal capacity.

> b.   Due Process Claims Against Colón-Díaz in his Personal Capacity

As discussed in part III.A.1.c., Plaintiffs plead sufficient facts to establish a due process claim against Colón-Díaz in his official capacity because Plaintiffs sufficiently show that it is plausible that Colón-Díaz knew Plaintiffs had only taken the required courses once, that Colón-Díaz admitted he knew that Cintrón-Suárez did not want them in the Municipal Police, and that Colón-Díaz was the one who ordered Plaintiffs to take the emergency courses on the same date as their CIPO 212 course.  (Docket Nos. 1 ¶¶ 33-34; 15-1.)  Thus, it is plausible that Colón-Díaz had actual or constructive notice of a constitutional violation against Plaintiffs if they were terminated. It is also plausible that Colón-Díaz's acts or omissions amounted to condonation or tacit authorization of the constitutional violation.  See Lipsett, 864 F.2d at 902.

In light of the reasoning applied to Colón-Díaz's liability in his official capacity, it is plausible that he may also be liable in his personal capacity.  Accordingly, the court hereby **DENIES** Defendants' motion to dismiss at Docket No. 19 as to Plaintiffs' due process claims against Colón-Díaz in his personal capacity.

> C.   First Amendment Political Discrimination Claim

The First Amendment right to freedom of speech protects non-policy-making public employees from adverse employment decisions based on political affiliation.   See Rutan v.

Civil No. 14-1354 (GAG)

Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Branti v. Finkel, 445 U.S. 507, 516 (1980); Elrod v. Burns, 427 U.S. 347, 354 (1976); Padilla-García v. Guillermo-Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000).  In order to establish a claim of political discrimination, a plaintiff initially bears the burden of showing that he or she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action.  González-de-Blasini, 377 F.3d at 85 (citing Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 285 (1977)).

An actionable claim of political discrimination under 42 U.S.C. § 1983 consists of four elements: (1) the plaintiff and defendant have opposing political affiliations; (2) the defendant is aware of the plaintiffs' affiliation; (3) an adverse employment action occurred; and, (4) political affiliation was a substantial or motivating factor for the adverse employment action.  Ocasio-Hernández, 640 F.3d at 13.  These elements, although necessary to establish a prima facie case, are not a pleading requirement, but an evidentiary standard.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); see also Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 n.1 (1st Cir. 2004) (stating that Swierkiewicz is fully applicable to all civil rights actions).  At the motion to dismiss stage, the prima facie elements discussed above are used as reference in helping the court determine if the cumulative effect of the complaint's factual allegations state a plausible claim for relief.  See Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 718 (1st Cir. 2014).

In the present case, Defendants concede that Plaintiffs meet the first three elements of a prima facie political discrimination claim.  (Docket No. 12 at 8.)  However, they argue that Plaintiffs fail to meet the fourth requirement.  Id.  Because Defendants concede that Plaintiffs and Defendants have opposing political affiliations, that Defendants were aware of Plaintiffs'

Civil No. 14-1354 (GAG)

affiliation, and that an adverse employment action occurred, the court must only determine whether political affiliation was a substantial or motivating factor in Plaintiffs' termination.

The fourth element of a political discrimination claim requires a reasonable inference that the Plaintiffs' political affiliation was a substantial or motivating factor in the Defendants' conduct. See Ocasio-Hernández, 640 F.3d at 16. At the motion to dismiss stage, there are several factors the court may consider to determine if a plausible discrimination claim exists as to the fourth element. See generally Mercado-Berríos v. Cancel-Alegría, 611 F.3d 18, 23 (1st Cir. 2010); see also Peguero-Moronta v. Santiago, 464 F.3d 29, 53 (1st Cir. 2006). For example, although temporal proximity between the change in political administration and the turnover of staff is not itself sufficient to satisfy Plaintiffs' burden of proof on the causation element, it unquestionably contributes to the reasonable inference that the employment decision was politically motivated. See Peguero-Moronta, 464 F.3d at 53.

As to the fourth element, the First Circuit has explained that a politically charged employment atmosphere caused by the major political shift in Puerto Rico from the NPP to the PDP coupled with the fact that plaintiffs and defendants are of competing political persuasions may be probative of discriminatory animus. Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993). Here, Plaintiffs allege such a politically charged atmosphere. (Docket No. 1 ¶¶ 19-21, 25-26.) Further, even though such an atmosphere, without more, provides no basis for a reasonable inference that Defendants' employment decisions about Plaintiffs were tainted by their disregard of Plaintiffs' first amendment rights, it is still a factor the court may consider. See Mercado-Berríos, 611 F.3d at 23.

As noted, in addressing the liability of each defendant in his official capacity for the political discrimination claims, the main question is whether each defendant's role in Plaintiffs'

24

Civil No. 14-1354 (GAG)

termination is sufficiently alleged to make him a plausible defendant.  <u>Ocasio-Hernández</u>, 640 F.3d at 16.  To attach liability to defendants in their personal capacity for a political discrimination claim, Plaintiffs must essentially prove that their constitutional injuries resulted from direct acts or omissions of each defendant.  <u>See</u> <u>Rodríguez-García</u>, 495 F.3d at 8.  Thus, regarding liability of each defendant for the political discrimination claims, in both their official and personal capacities, Plaintiffs must allege that: (1) he has a political discriminatory animus, bias, or agenda; and (2) there is a causal connection between those biases and the challenged employment action.  <u>Mercado-Berríos</u>, 611 F.3d at 23.

Here, Plaintiffs allege, in pertinent part, that they were dismissed approximately four months after the change in political administration, following the general elections.  (Docket No.1 ¶¶ 31-35.)  Plaintiffs further allege that after their dismissal, the Municipal Police in the Municipality hired PDP supporters to different positions, thus replacing Plaintiffs with PDP members.  <u>Id.</u> ¶ 38.

## 1.  First Amendment Claims Against Cintrón-Suárez and the Municipality

Regarding Cintrón-Suárez's political agenda or discriminatory animus, Plaintiffs allege that during the campaign season, when they were assigned as security officers to Cintrón-Suárez's campaign headquarters and, after Cintrón-Suárez took office as Mayor-Elect, the atmosphere was politically-charged.  (Docket Nos. 1 ¶¶ 19-21; 25-26.)  On one occasion during the campaign, Plaintiffs allege that Cintrón-Suárez referred to them as "people I do not trust" and also said: "I need people I can trust and see who they send to my campaign headquarters, but you will be kicked out when I win."  <u>Id.</u> ¶ 26.  Plaintiffs also allege that immediately following the general elections, municipal employees affiliated with the PDP began telling them that Cintrón-Suárez came to "clean them out."  <u>Id.</u> ¶ 19.  They further allege that Cintrón-Suárez criticized their

25

**Civil No. 14-1354 (GAG)**

appointments with personal attacks.  <u>Id.</u> ¶ 21.  Notably, Plaintiffs claim that Cintrón-Suárez's actions, plagued by his political animus, played a role in their dismissal.  <u>Id.</u> ¶¶ 34-35.  Allegations of Cintrón-Suárez referring to Plaintiffs as people he did not trust because they were NPP supporters, saying that Plaintiffs would be kicked out when he won the elections and criticizing their appointments by personally insulting them all denote discriminatory animus by Cintrón-Suárez.  (<u>See</u> Docket No. 1 ¶¶ 21, 26.)  In addition to Cintrón-Suárez's discriminatory statements about Plaintiffs' political affiliation, Cintrón-Suárez signed Plaintiffs' dismissal letter, and allegedly used Superintendent Pesquera's letter as a pretext to dismiss them as cadets.  <u>Id.</u> ¶¶ 34-35.

Conversely, Defendants deny any political motivation associated with Plaintiffs' dismissal and contend that Plaintiffs were dismissed because they failed the physical training and CIPO 212 courses twice at the CUJC, thus failing to meet the CUJC's requirements.  (Docket No. 12 at 8.) Defendants also claim that they have no power over the independent decisions of the CUJC or the Superintendent of the Police.  <u>Id.</u> at 9.  Plaintiffs, nevertheless, counter these contentions by alleging that they did not fail those courses twice and that Cintrón-Suárez was aware of this but his political bias led to their termination.  (Docket No. 23 ¶ 15.)

The court finds that it is plausible that Cintrón-Suárez directly or indirectly caused Plaintiffs' constitutional injury because Plaintiffs have alleged sufficient facts which, taken as true, allow the court to draw a reasonable inference that Cintrón-Suárez's actions against Plaintiffs were driven by political discriminatory animus, and that there is a causal connection between that animus and the challenged employment action.  At this stage, Plaintiffs have pleaded sufficient facts for the court to reasonably infer that Cintrón-Suárez had a political agenda and his actions were linked to the deprivation of Plaintiffs' rights.  Accordingly, the court hereby **DENIES**

**Civil No. 14-1354 (GAG)**

Defendants motion to dismiss at Docket No. 12 and Docket No. 19 as to Plaintiffs' First Amendment political discrimination claims against Cintrón-Suárez in his official capacity, and in his personal capacity.

In light of the court's finding as to Cintrón-Suárez's liability in his official capacity, it is plausible that the Municipality is liable for the alleged constitutional injury caused to Plaintiffs by Cintrón-Suárez's action or inactions as Mayor of Guayama.  As discussed above in part III.B.1.a., liability may be imposed on the Municipality for Cintrón-Suárez's own direct acts or omissions which may have resulted in a violation of Plaintiffs' rights.   Accordingly, the court hereby **DENIES** the motion to dismiss at Docket No. 12 as to the First Amendment claims against the Municipality.

### 2.   First Amendment Claims Against Colón-Díaz

Same as with Cintrón-Suárez, to attach liability to Colón-Díaz in his official and personal capacity for the First Amendment claim, Plaintiffs have the burden of producing factual allegations of his: (1) political agenda or bias; and (2) causal connection between his political biases and the challenged employment action.  See Mercado-Berríos, 611 F.3d at 23.

The court now turns to the first prong: political agenda or bias.  Here, aside from alleging that Colón-Díaz knew that Plaintiffs were affiliated with the NPP, Plaintiffs fail to lodge any facts to demonstrate that Colón-Díaz had any political agenda or discriminatory animus against them. Plaintiffs allegations further demonstrate that Colón-Díaz helped them with their request to the CUJC to retake the two courses they had not passed.  (Docket Nos. 1 ¶ 33; 20-1.)  An examination of the record shows that Colón-Díaz forwarded Plaintiffs' request. (Docket No. 20-1.)  Plaintiffs lodge two other allegations concerning Colón-Díaz: (1) that he allegedly told Plaintiffs to report to the Human Resources Office of the Municipality where they received their termination letters; and

Civil No. 14-1354 (GAG)

(2) that he allegedly told Plaintiffs that he did all he could but that Cintrón-Suárez wanted them out of the Municipal Police.  Id. ¶¶ 34-35.  Taking these allegations as true, the court finds that a showing of a political bias or discriminatory animus by Colón-Díaz is lacking.   After careful examination of Plaintiffs' factual allegations against Colón-Díaz the court finds that Plaintiffs fail to produce facts of Colón-Díaz's political agenda or bias; therefore, they fail to satisfy the first prong of the test.  As such, the court need not delve into the second prong.

Thus, drawing on its judicial experience and common sense in making a contextual judgment about the sufficiency of the pleadings, the court cannot draw a reasonable inference that Colón-Díaz was in any way liable for Plaintiffs' First Amendment constitutional injuries because Plaintiffs fail to set forth any facts that point to Colón-Díaz's political agenda or discriminatory animus towards Plaintiffs.  The mere fact that an employer and an employee belong to opposing political parties, and are aware of it, does not by itself provide an adequate basis for inferring the existence of political discrimination.  See Estrada-Izquierdo v. Aponte-Roque, 850 F.2d 10, 20 (1st Cir. 1988) (stating that not every Republican who fires, demotes or reassigns a Democrat acts out of political animus).  As such, because Plaintiff failed to include any factual allegations that Colón-Díaz had a political agenda or discriminatory animus, there can be no causal connection between that political agenda or discriminatory animus and Plaintiffs' adverse employment action. Plaintiffs' First Amendment claims of political discrimination against Colón-Díaz in his official and personal capacity cannot withstand dismissal.

Accordingly, the court hereby **GRANTS** Defendants motion to dismiss at Docket No. 12 as to the First Amendment political discrimination claims against Colón-Díaz in his official capacity and said claims are hereby **DISMISSED**.  The court also **GRANTS** Defendants motion to dismiss

Civil No. 14-1354 (GAG)

at Docket No. 19 as to the First Amendment political discrimination claims against Colón-Díaz in his personal capacity and said claims are hereby **DISMISSED**.

### D.  Qualified Immunity

In moving to dismiss Plaintiffs' claims against Defendants in their personal capacities, Defendants argue that Plaintiffs cannot assert these claims against them because they are entitled to qualified immunity.  (Docket No. 19 at 14.)  Qualified immunity is an affirmative defense against personal liability which may be raised by state officials.  Whitfield v. Meléndez-Rivera, 431 F.3d 2, 6 (1st Cir. 2005).  It provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. Section 1983 for infringing the constitutional rights of private parties.  Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987).  The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Díaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011). Thus, when, as is the case here, plaintiffs allege multiple constitutional claims Section 1983 against multiple defendants who have asserted qualified immunity, the district court must analyze the immunity defense for each claim and each defendant, not lump the various claims and defendants together.  Id.  **As an affirmative defense, the burden of proof is on the defendants**. DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001).

Courts follow a two-prong analysis for determining whether defendants are entitled to qualified immunity, and must determine: (1) whether the facts alleged or shown by plaintiff make out a violation of a constitutional right; and, (2) if so, whether the right was clearly established at the time of the defendant's alleged violation.  Díaz-Bigio, 652 F.3d at 50.  The second prong, in turn, has two parts: (a) whether the legal contours of the right in question were sufficiently clear

**Civil No. 14-1354 (GAG)**

that a reasonable official would have understood that what he was doing violated that right; and (b) whether the particular factual violation in question would have been clear to a reasonable official. Id. It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

As to Colón-Díaz, the court's aforementioned reasoning and dismissal of the First Amendment political discrimination claims against him both in his official and in his personal capacities renders an analysis of his qualified immunity defense as to said claims moot. In turn, the court delves into Colón-Díaz's qualified immunity analysis as to the procedural due process claim, and Cintrón-Suárez's qualified immunity analysis for all claims asserted against him in his personal capacity. Here, the first prong of the qualified immunity analysis (a showing of a constitutional right violation) has been established, as discussed throughout this opinion. As such, the court focuses on the second prong of the qualified immunity test, namely, whether the right was clearly established at the time of the violation.

### 1. Qualified Immunity Defense and the Procedural Due Process Claim

The first subpart of the second prong of the qualified immunity analysis requires the court to analyze whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right. Díaz-Bigio, 652 F.3d at 50. The court thus addresses whether the state of law governing Plaintiffs' rights gave Defendants clear-notice that what they were doing was unconstitutional. See Costa-Urena v. Segarra, 590 F.3d 18, 28 (1st Cir. 2009). It is clearly established that the Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment. See Cleveland Bd of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). It is also clearly established that under Puerto Rico law, career employees shall be entitled

**Civil No. 14-1354 (GAG)**

1    to permanent status and may only be removed from office positions for just cause. P.R. LAWS

2    ANN. tit. 21, § 4554. Nevertheless, probationary career employees may be removed without just

3    cause. Id.

4       Further, part two of the second prong requires the court to determine whether the particular

5    factual violation in question would have been clear to a reasonable official. See Díaz-Bigio, 652

6    F.3d at 50. Moreover, if officers of reasonable competence could disagree on the lawfulness of the

7    action, they are entitled to immunity. Id. at 51.

8       Plaintiffs claim that Defendants had actual or constructive notice of the constitutional

9    violation. As to Cintrón-Suárez, they allege that he terminated their employment under the pretext

10    that Plaintiffs failed the physical training and CIPO 212 courses twice, even though Plaintiffs

11    claim he knew they had only taken them once. (Docket No. 1 ¶ 33-34.) In turn, Plaintiffs allege

12    their termination was premature and but-for Cintrón-Suárez's actions they would have taken the

13    courses, passed them, and become municipal officers with a property interest in their employment.

14    Taking Plaintiffs' allegations as true, a reasonable public official in the same or similar

15    circumstances as Cintrón-Suárez should have known that dismissing Plaintiffs using

16    Superintendent Pesquera's letter as pretext and with knowledge that Plaintiffs had only failed the

17    physical training and CIPO 212 courses once would violate Plaintiffs' due process rights.[4]

18       As to Colón-Díaz, it is plausible that he knew that Plaintiffs had only taken the CIPO 212

19    course once and that they needed to pass said course and the physical training to meet the CUJC

20    requirements because he wrote a letter to the CUJC requesting Plaintiffs be allowed to retake said

21    course and the physical training. (Docket Nos. 1 ¶ 33-34; 20-1.) Nevertheless, Colón-Díaz

22

23       [4] In the alternative, assuming *arguendo* that Cintrón-Suárez based his dismissal decision on the letter from

24    Superintendent Pesquera with no knowledge that Plaintiffs had only failed the courses once; it is plausible that officers of reasonable competence could disagree on the lawfulness of his actions.

Civil No. 14-1354 (GAG)

ordered them to report to the Human Resources Office of the Municipality where they received their dismissal letter.  (Docket No. 1 ¶ 35.)  Taking these allegations as true, it is plausible that a reasonable public official in the same or similar circumstances as Colón-Díaz should have known that assigning Plaintiffs to take an emergency management course the same day they would have taken the CIPO 212 course and sending them to Human Resources to receive their termination letters would violate Plaintiffs' due process rights.

Also relevant to this discussion is the issue of whether it is plausible that the Municipal Police Regulations, or any other applicable regulation, city ordinance, law or source of rights, grants a clearly established proprietary right to Plaintiffs as police cadets or sets forth any due process requirements to terminate a cadet.  Thus, at this time the court cannot rule on whether officers of reasonable competence could disagree on the lawfulness of Defendants actions as material issues of fact prevent it from doing so.

When the court cannot say, on the basis of the pleadings alone, that an objective official in the defendants' position, as a matter of law, would have reasonably concluded his actions were **not** in violation of a constitutional right, the court is correct in denying qualified immunity based on the pleadings.  See Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009).  Since the court cannot say, at this stage, whether officers of reasonable competence could disagree on the lawfulness of the dismissal at issue because it is unclear whether a reasonable public official in either Cintrón-Suárez's or Colón-Díaz's positions would have known that his acts could result in a constitutional violation, the court **DENIES without prejudice** Defendants' qualified immunity request as to the due process claims.

Therefore, the court **DENIES** Defendants' motion to dismiss at Docket No. 19 based on Cintrón-Suárez's and Colón-Díaz's qualified immunity defense in regards to the due process

Civil No. 14-1354 (GAG)

claim.  Nevertheless, the court notes that Defendants may raise this defense again on a further

developed record.  The court nevertheless directs Defendants to better flesh it out if they intend to

preserve it.

### 2.  Cintrón-Suárez's Qualified Immunity and Political Discrimination claim

Concerning Cintrón-Suárez's qualified immunity defense as to the First Amendment claim

brought against him in his personal capacity, unlike the legal contours of municipal law in regards

to due process, Plaintiffs' First Amendment rights against political discrimination were sufficiently

clear that a reasonable official would have understood that some of his actions were discriminatory

in nature.  Plaintiffs allege that the atmosphere at the Municipality was politically-charged, both

during the election campaign season when they were assigned to Cintrón-Suárez's campaign

headquarters and after Cintrón-Suárez took office as Mayor-Elect; that Cintrón-Suárez made

comments to Plaintiffs' with vices of discrimination, and that he threatened them with firing them

because of their political affiliation.  (Docket Nos. 1 ¶¶ 19-21; 25-26.)  Plaintiffs also allege that

immediately following the general elections, municipal employees affiliated with the PDP began

telling Plaintiffs that Cintrón-Suárez came to "clean them out."  (Docket No. 1 ¶ 19.)  Taking

Plaintiffs' allegations as true, it is clear that a reasonable public official in Cintrón-Suárez's

position would have known that said acts constituted political discrimination and could result in a

constitutional violation of Plaintiffs' rights.

Again, Defendants provide no arguments to satisfy the burden of proof as to the second

prong of the qualified immunity defense analysis.  Based on the foregoing, Cintrón-Suárez cannot

successfully plead the qualified immunity defense in regards to Plaintiffs' First Amendment

claims.  Therefore, the court **DENIES without prejudice** Defendants' motion to dismiss at Docket

No. 19 based on Cintrón-Suárez's qualified immunity defense as to said claims.  Nevertheless, the

**Civil No. 14-1354 (GAG)**

court notes that Cintrón-Suárez may preserve his qualified immunity defense on a further developed record but he must satisfy the burden of proof.

### IV.    Conclusion

Defendants' motion to dismiss all claims against them in their official capacities at Docket No. 12 is **GRANTED in part** and **DENIED in part** as follows. Defendants' motion to dismiss all claims against Cintrón-Suárez in his official capacity and against the Municipality is **DENIED**. Defendants' motion to dismiss the procedural due process claims against Colón-Díaz in his official capacity is hereby **DENIED.** However, Defendants' motion to dismiss the First Amendment claims against Colón-Díaz in his official capacity is hereby **GRANTED.** Accordingly, Plaintiffs' First Amendment claims against Colón-Díaz in his official capacity are hereby **DISMISSED.** Finally, Defendants' motion to dismiss at Docket No. 19 based on Cintrón-Suárez's and Colón-Díaz's qualified immunity defense as to Plaintiffs' due process claims is hereby **DENIED without prejudice** and may be re-asserted by said Defendants.  By the like token, Defendants motion to dismiss at Docket No. 19 based on Cintrón-Suárez's qualified immunity as to Plaintiffs' political discrimination is hereby **DENIED** without prejudice and may also be re-asserted at a later time.

Further, Defendants' motion to dismiss all claims against Defendants in their personal capacities at Docket No. 19 is **GRANTED in part** and **DENIED in part**.  Defendant's motion to dismiss the procedural due process claims against Cintrón-Suárez in his personal capacity is hereby **DENIED**.  Defendants' motion to dismiss the procedural due process claims against Colón-Díaz in his personal capacity is hereby **DENIED**.  Defendants' motion to dismiss Plaintiffs' First Amendment claims against Cintrón-Suárez in his personal capacity is **DENIED**. However, Defendants' motion to dismiss the First Amendment claims against Colón-Díaz in his personal

**Civil No. 14-1354 (GAG)**

capacity is hereby **GRANTED**.  Accordingly, Plaintiffs' First Amendment claims against Colón-Díaz in his personal capacity are hereby **DISMISSED**.

In sum, all of Plaintiffs claims against Cintrón-Suárez and the Municipality survive. Nevertheless, Plaintiffs First Amendment political discrimination claims against Colón-Díaz in his personal and official capacities are hereby **DISMISSED**.  Lastly, because the federal claims giving rise to federal jurisdiction in this case have not all been dismissed, the court **DENIES without prejudice** Defendants' motion to dismiss all supplemental law claims at this time.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of July, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge